**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Margaret Khouri, | ) | No. CV 06-02794-PHX-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Yuma Gastroenterology, P.C., et al., | ) | |
| Defendants. | ) | |
| | ) | |
| Yuma Gastroenterology, P.C., et al., | ) | |
| Counterclaimants, | ) | |
| vs. | ) | |
| Margaret Khouri, | ) | |
| Counterdefendant. | ) | |

**I.**

The court has before it plaintiff/counterdefendant Khouri's ("plaintiff") "Motion to Dismiss Counterclaim" (doc. 8); defendants/counterclaimants Yuma Gastroenterology P.C., Esker, Sanghvi and Anireddy's ("defendants") "Opposition to Motion to Dismiss Counterclaim and Motion for Leave to Amend Counterclaim" (doc. 10) and "[Proposed] Amended Counterclaim" (attached as an exhibit to doc. 10); plaintiff's "(1) Reply in Support of Motion to Dismiss; & (2) Opposition to Motion for Leave to Amend Counterclaim" (doc.

1    12). and defendants' "Reply in Further Support of Their Motion to Amend" (doc. 14).[1]

2    Plaintiff moves to dismiss pursuant to Rule 12(b)(1), Fed. R. Civ. P., arguing that we do not

3    have supplemental jurisdiction over defendants' counterclaims. For the reasons stated below,

4    we deny plaintiff's motion.[2]

5                                                   **II.**

6          We have original jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332.  If

7    defendants' counterclaims are so related to plaintiff's claims "that they form part of the same

8    case or controversy," we have supplemental jurisdiction over the counterclaims pursuant to

9    28 U.S.C. § 1367(a).  Counterclaims that derive from the same "common nucleus of

10   operative fact" as the original claims form part of the same case or controversy as the original

11   claims.  United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966).

12         Plaintiff argues that we have supplemental jurisdiction under § 1367(a) if defendants'

13   counterclaims are compulsory; that is, if they arise "out of the transaction or occurrence" that

14   is the subject matter of plaintiff's claims.  See Motion to Dismiss at 3 (quoting Fed. R. Civ.

15   P. 13(a)).  The Ninth Circuit applies the "logical relationship" test to determine whether a

16   counterclaim is compulsory.  In re Pinkstaff, 974 F.2d 113, 115 (9th Cir. 1992).  A logical

17   relationship exists between the counterclaim and the claim when "the same operative facts

18   serve as the basis of both claims or the aggregate core of facts upon which the claim rests

19   activates additional legal rights otherwise dormant in the defendant." Id.  Also, claims have

20   a logical relationship when " 'the essential facts of the various claims are so logically

21   connected that considerations of judicial economy and fairness dictate that all the issues be

22

23         [1] Although plaintiff moves to dismiss defendants' "counterclaim," defendants' answer

24   alleges counterclaims of defamation and slander, breach of fiduciary duty and breach of

     contract.  See Answer (doc. 5) at 9-11.  For the sake of clarity, we note that this order

25   addresses our ability to assert jurisdiction over each counterclaim.

26         [2] Defendants alternatively seek leave to amend to assert independent jurisdictional

27   bases.  Because we conclude that we have supplemental jurisdiction over the counterclaims,

     we do not reach defendants' alternative argument, and deny the motion to amend on grounds

28   of mootness.

resolved in one lawsuit.' " <u>Hydranautics v. FilmTec Corp.</u>, 70 F.3d 533, 536 (9th Cir. 1995) (quotation omitted).

The logical relationship test bears obvious similarity to the Section 1367(a) common nucleus inquiry.  In fact, the First, Fifth, and Eleventh Circuits' compulsory counterclaim analyses have been described as "co-extensive" with Section 1367(a)'s accord of jurisdiction over claims arising from a common nucleus of operative fact.  3 James Wm. Moore et al., Moore's Federal Practice - Civil § 13.10.  However, the Ninth Circuit's Rule 13(a) logical relationship test is more restrictive than other circuits' Rule 13(a) common nucleus of operative facts analyses.  <u>Id.</u>  Therefore, in determining whether we have supplemental jurisdiction over defendants' counterclaims, Rule 13(a) precedent is informative.  However, to the extent that it is more restrictive than the analysis derived from <u>Gibbs</u>, 383 U.S. at 725, 86 S. Ct. at 1138, it is not controlling for purposes of determining whether we have Section 1367(a) jurisdiction.

**III.**

Plaintiff's complaint alleges nine causes of action:  breach of the parties' shareholder agreement, breach of fiduciary duty, tortious breach of the shareholder agreement, violation of Arizona's Anti-Trust Act, assault and battery, intentional infliction of emotional distress, wrongful discharge in violation of the Arizona Employment Protection Act, intentional interference with contractual relations and business expectancy, and Violation of A.R.S. § 13-2301.  <u>See</u> <u>Complaint</u> (doc. 1).  Plaintiff contends that from approximately February 2001 until March 31, 2006, she was a shareholder and employee of defendant Yuma Gastroenterology, P.C., where defendants Anireddy, Esker and Sanghvi were also shareholders and employees.  <u>Id.</u> at 3-4.  Plaintiff states that defendants attempted to force plaintiff to forego her interest in Yuma Gastroenterology, and to "quit her medical practice in the Yuma area."  <u>Id.</u> at 4.

Defendants allege counterclaims of defamation and slander, breach of fiduciary duty, and breach of employment contract and shareholder agreement.  <u>Answer</u> at 9-11.  They also

contend that in January 2005, plaintiff spoke with a physician defendants sought to recruit to their medical practice.  Id. at 9.  Plaintiff allegedly "knowingly made false statements to that physician concerning [defendants'] honesty, integrity, virtue and reputation," and those statements were designed to, and did, bring defendants into "disrepute, contempt and/or ridicule."  Id.  Further, defendants assert that plaintiff breached her fiduciary duties by "engaging in conduct detrimental to" defendants' interests, by impugning defendants' reputation, "failing to discharge her obligations as a physician employee" of Yuma, and "intentionally acting in a manner designed to injure" defendants.  Id. at 10.

A.

Plaintiff first argues that we cannot exercise jurisdiction over defendants' counterclaims because they do not share a logical relationship with plaintiff's claims, and involve "discreet [sic] issues of law and fact."  Motion to Dismiss at 5.  In particular, plaintiff contends that her claims "relate[] to the events leading up to and underlying" plaintiff's February 2006 termination, but the counterclaims relate to events "that occurred around the time [plaintiff] allegedly made defamatory statements," around January 2005.  Id.

We reject this argument.  A comparison of the parties' claims and counterclaims indicates that they share a common nucleus of operative facts.  Plaintiff's assault and battery claim specifies that the underlying conduct occurred on February 12, 2006.  Complaint at 8.  However, none of the remaining claims focuses on so limited a time period.  Instead, they implicate events that occurred throughout the course of plaintiff's four years of employment at Yuma Gastroenterology.  For example, plaintiff's intentional infliction of emotional distress claim alleges that defendants had a "malicious plan" to force plaintiff out of the Yuma Gastroenterology practice.  Id. at 9.  Although plaintiff alleges that she was forced to resign in February 2006, her wrongful termination claim alleges that defendants "wrongfully and repeatedly demanded that Plaintiff relinquish her interest" in Yuma.  Id. at 10.

In defending against plaintiff's wrongful discharge claim, which implicates events "leading up to and underlying" plaintiff's resignation, Motion to Dismiss at 2, defendants will

1   also introduce evidence regarding plaintiff's conduct throughout the course of her four years

2   of employment. Defendants allege that the events surrounding the allegedly defamatory and

3   slanderous statements occurred during plaintiff's Yuma Gastroenterology employment.

4   Therefore, defendants' defense to plaintiff's wrongful termination claim and defendants'

5   defamation and slander counterclaims will implicate overlapping events and evidence.

6         Defendants' remaining counterclaims (breach of fiduciary duty and breach of

7   employment contract and shareholder agreement) implicate the parties' shareholder and

8   employment agreements.  Four of plaintiff's claims (breach of the parties' shareholder

9   agreement, breach of fiduciary duty, tortious breach of the shareholder agreement, and

10  intentional interference with contractual relations and business expectancy) do the same.

11  Adjudication of these claims and counterclaims will involve the parties' agreement and

12  conduct as fiduciaries over the course of plaintiff's employment.  Further, adjudication will

13  look beyond the months leading up to plaintiff's resignation.  Indeed, plaintiff concedes that

14  both the counterclaims and her own claims "involve the employee-shareholder relationship."

15  Motion to Dismiss at 5.  Plaintiff's participation in that relationship lasted several years.[3]

16

17                                        B.

18        Plaintiff next argues that we lack supplemental jurisdiction over the counterclaims

19  because defendants "do not allege that [plaintiff's] alleged defamation and slander, breach

20  of contract and breach of fiduciary duty resulted in or are any way related to her termination

21  and the events leading up to her termination." Motion to Dismiss at 6.  Defendants respond

22  that the events which form the basis of their counterclaims "led to and underlie" plaintiff's

23  termination.  Opposition at 3.  Plaintiff argues that this characterization is "disingenuous"

24  _____

25        [3] Plaintiff also argues that "there is no indication that the same evidence will be used
    to support" the parties' claims.  Id. at 6.  For the reasons stated above, we conclude that
26  plaintiff's claims and defendants' counterclaims that are contract-based will involve evidence
    of the parties' shareholder and employment agreements, and the parties' conduct.  Similarly,
27  defendants' defamation and slander counterclaims will implicate some of the evidence related
28  to a wrongful discharge defense.

because the counterclaims do not "allege that [plaintiff] was 'terminated,' much less that her 'termination' was in any way related to the counterclaims." <u>Reply</u> at 3.

The fact that the counterclaims fail to allege some sort of logical relationship with plaintiff's termination is immaterial. Allegations regarding plaintiff's termination have no effect on the validity of the causes of action defendants have stated in their counterclaims. However, defendants will answer plaintiff's claims with evidence regarding the shareholder agreement, and plaintiff's conduct throughout the course of her employment. That same evidence will be used to establish defendants' counterclaims. Therefore, although the counterclaims do not make explicit mention of plaintiff's termination, they nevertheless form part of the same controversy as plaintiff's claims.

C.

Finally, considerations of fairness support our conclusion. If we do not have supplemental jurisdiction over defendants' defamation and slander claims, defendants would be forced to litigate those claims in an alternative forum. However, our adjudication of plaintiff's wrongful termination claim might include an adjudication of the truthfulness of the statements defendants allege are defamatory and slanderous. As a result, even if defendants re-filed their defamation and slander claims, issue preclusion could defeat them. <u>See</u> <u>Pochiro v. Prudential Ins. Co.</u>, 827 F.2d 1246, 1251 (9th Cir. 1987) ("As long as the allegedly defamatory statements are sufficiently related to subject matter of the original action, they may be barred as compulsory counterclaims.").

1    **THEREFORE, IT IS ORDERED DENYING** plaintiff's motion to dismiss

2  counterclaim (doc. 8) and it **FURTHER ORDERED DENYING** defendants' motion for

3  leave to amend counterclaim (doc. 10) on grounds of mootness.

4    DATED this 23rd day of April, 2007.

5

6

7                     *Frederick J. Martone*
                  Frederick J. Martone
8                  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28